Bruce D. Katz, Esq. (BK-2041)
LAW OFFICES OF BRUCE D. KATZ
& ASSOCIATES
225 Broadway – 37th Floor
New York, NY 10007
Phone: (212)233-3434
Fax: (212)208-3060

*Attorneys for Defendants/Counterclaim-Plaintiffs*
Zap Zone Network, Mail Centro, Inc.
and CP Software Group

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------)
ADVANCE MAGAZINE PUBLISHERS,       )
INC. d/b/a THE CONDE NAST          )           07-CV-7923(SHS)
PUBLICATIONS,                      )
                                   )
            Plaintiff,             )
                                   )                ANSWER
            v.                     )          AND COUNTERCLAIMS
                                   )
ZAP ZONE NETWORK, MAIL CENTRO,     )
INC. and CP SOFTWARE GROUP,        )
                                   )
                                   )
            Defendants.            )
----------------------------------------------------------- )

Defendants, ZAP ZONE NETWORK, MAIL CENTRO, INC. and CP SOFTWARE

GROUP, ("Defendants"), by their undersigned counsel, hereby file this Answer and

Counterclaims in response to the Complaint filed herein by Plaintiff, ADVANCE MAGAZINE

PUBLISHERS, Inc. d/b/a/ THE CONDE NAST PUBLICATIONS (hereinafter "Plaintiff" or

"AMPI")

Defendants deny each and every allegation, matter and thing alleged in Plaintiff's

Complaint unless hereinafter specifically admitted or otherwise answered.

## NATURE OF ACTION

1.      This action seeks injunctive relief and damages against defendants for: (i) willful infringement of federally registered trademarks, as well as common law trademarks, in violation of the United States Trademark Act of 1946, as amended, 15 U.S.C. §1051, et seq.; (ii) dilution of federally registered trademarks, as well as common law trademarks, in violation of the Federal Trademark Dilution Act of 1995, as amended, 15 U.S.C. §1125(c); (iii) federal unfair competition in violation of Section 43(a) of the United States Trademark Act of 1946, as amended, 15 U.S.C. §1125(a); (iv) related claims of unfair competition, dilution and deceptive trade practices in violation of the laws of the State of New York and common law; and (v) contributory infringement of AMPI's trademarks.

**ANSWER:**

The allegations contained in Paragraph 1 of the Complaint state legal conclusions to which no response is required.  However, to the extent a response is appropriate, Defendants admit that Plaintiff seeks injunctive and monetary relief against Defendants for trademark and trade name infringement, dilution, unfair competition, deceptive trade practices and contributory infringement.

2.      AMPI is the publisher of many of the most recognized magazines in the world, including *Vogue, Teen Vogue, Glamour, Conde Nast Traveler, Wired, and Details*.  AMPI is the owner of famous and distinctive federal and common law trademarks in the names of those magazines, among others.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 2 of the Complaint and, therefore, deny the same.

3.      Defendant Zap Zone Network claims that it "delivers free email to more than 3 million email boxes and 350,000 individual websites in 128 countries around the world." To help generate the millions of email boxes - and to maintain its lucrative advertising and other revenue lines - Zap Zone Network and its related entities maintain a database of email addresses incorporating famous trademarks, including AMPI's world famous marks, offer those addresses to consumers for use, and then leverage the value of those marks by driving advertising to the owners of those email addresses. Despite repeated requests by AMPI to ZZN to remove the addresses containing AMPI's marks, ZZN willfully continues to offer and maintain such infringing marks in its database.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 3 of the Complaint, except admit that Defendant Zap Zone Network has stated that it "delivers free email to more than 3 million email boxes and 350,000 individual websites in 128 countries around the world."

4.      Plaintiff brings this action to put an end to defendants' infringing acts and seeks to enjoin defendants from offering and using to attract advertising revenue variations of AMPI's marks as part of their customer's email addresses, with an intent to trade on the value of AMPI's intellectual property, resulting in confusion and significant injury to AMPI's goodwill and reputation.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 4 of the Complaint

## THE PARTIES

5.      Plaintiff AMPI is a corporation organized under the laws of the State of New York, with its principal offices located at Four Times Square, New York, New York 10036.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 5 of the Complaint and, therefore, deny the same.

6.    Upon information and belief, defendant Zap Zone Network, is a wholly owned subsidiary of defendant MailCentro, Inc. and is organized under the laws of the State of California. Upon further information and belief, defendant Zap Zone Network regularly conducts business in New York.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 6 of the Complaint, except admit that Defendant Zap Zone Network is organized under the laws of the State of California.

7.    Upon information and belief, defendant MailCentro, Inc. is a corporation organized under the laws of the State of California, with its operating offices in Folsom, California. Upon further information and belief, MailCentro operates Zap Zone Network.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 6 of the Complaint, except admit that Defendant MailCentro, Inc. is a corporation organized under the laws of the State of California, with its operating offices in Folsom, California.

8.    Upon information and belief, defendant CP Software Group is a privately-held corporation organized under the laws of the State of California, with its operating offices in Folsom, California. Upon further information and belief, CP Software Group manages both MailCentro, Inc. and Zap Zone Network.

4

**ANSWER:**

Defendants deny the allegations contained in Paragraph 6 of the Complaint, except admit that Defendant CP Software Group is a privately-held corporation organized under the laws of the State of California, with its operating offices in Folsom, California.

9.      Upon information and belief, defendants regularly conduct business in New York, in that a number of defendants' customers are based in New York and defendants provide services directly to customers based in New York.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 9 of the Complaint,

**JURISDICTION AND VENUE**

10.      This action arises under 15 U.S.C. §§ 1051-1127 (the "Lanharn Act"), New York General Business Law §§ 349 and 360-L, and the common law of trademark and unfair competition, as more fully set forth below.  This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. §1121.  In addition, this Court has jurisdiction over these claims under the principals of supplemental jurisdiction pursuant to 28 U.S.C. §1367.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 10 of the Complaint, except admit that this action purports to arise under the Lanham Act and jurisdiction purports to be conferred pursuant to Title 15 U.S.C. §1121 and Title 28 U.S.C. §§ 1331 and 1338, and pursuant to the principles of supplemental jurisdiction under Title 28 U.S.C. §1367.

11.     This Court has personal jurisdiction over defendants because upon information and belief, defendants conduct business in the State of New York and have otherwise committed infringing acts in New York, causing injury to plaintiff who is a New York corporation.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 11 of the Complaint,

12.      Venue is proper in this judicial district under 28 U.S.C. §1391 because upon information and belief, a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district and New York.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 12 of the Complaint,

## FACTUAL BACKGROUND

### AMPI'S Trademarks and Websites

13.     AMPI is a publishing company, whose magazines have a combined circulation of over 17 million per month worldwide, and they are estimated to reach more than 180 million people per year.  Most of its magazines are known in the industry as "general interest" publications, because they appeal to and are read by a broad demographic of readers.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 13 of the Complaint and, therefore, deny the same.

14.     Since 1892, AMPI and its predecessors-in-interest have published and widely sold and distributed throughout the United States and abroad the women's fashion and style magazine Vogue.  The trademark VOGUE is one of the most valuable and well-known brands in the fashion, beauty and publishing industries.  The first VOGUE trademark (No. 69,530) was

registered with the federal government in 1908 for magazines. AMPI holds eight other

registrations for VOGUE trademarks registered in various classes (Registration Nos. 3,069,976,

2,701,928, 1,659,761, 1,666,656, 1,336,659, 504,006, 125,542 and 103,770). AMPI also holds

federal trademark registrations for at least twenty-five other trademarks that incorporate the term

"Vogue", including the marks VOGUE.COM (No. 2,592,452), and VOGUE NOVIAS (No.

1,863,179). A copy of a print-out from the United States Patent and Trademark Office ("PTO")

website of AMPI's registrations and applications for the various VOGUE marks is annexed

hereto as Exhibit A.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the

allegations contained in Paragraph 14 of the Complaint and, therefore, deny the same; except

Defendants admit that Exhibit A to the Complaint purports to contain a copy of a print-out from

the United States Patent and Trademark Office ("PTO") website.

15.     The U.S. edition of *Vogue* reaches an average monthly audience of over

1,301,468.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the

allegations contained in Paragraph 15 of the Complaint and, therefore, deny the same.

16.     In addition to the U.S. edition, *Vogue* is published through AMPI's subsidiaries or

through local licensees in numerous countries and regions, including England, France, Germany,

Spain, Brazil, Italy, Greece, Portugal, Russia, Korea, Taiwan, China, Japan, Australia and Latin

America. AMPI owns over 1,000 trademark registrations worldwide for VOGUE in connection

with magazines and online publications and distribution of information.  A trademark report showing AMPI's worldwide registrations for VOGUE is annexed hereto as Exhibit B.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 16 of the Complaint and, therefore, deny the same; except Defendants admit that Exhibit B to the Complaint purports to contain a copy of a print-out from the United States Patent and Trademark Office ("PTO") website.

17.    Since 2000, AMPI or its predecessors-in-interest have also published and widely sold and distributed throughout the United States and abroad the teen-focused magazine Teen Vogue.  AMPI owns several registrations and applications for TEEN VOGUE trademarks in several classes, including Serial Nos. 76,651,319 and 7,661,344, Registration Nos. 3,134,461, 2,934,621, 2,770,479, 2,770,478, 2,793,299, 2,914,890, 2,835,164 and 2,568,246 (which was registered in the PTO on May 7, 2002).  A copy of a print-out from the PTO website of AMPI's registrations and applications for the TEEN VOGUE marks is annexed hereto as Exhibit C.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 17 of the Complaint and, therefore, deny the same; except Defendants admit that Exhibit C to the Complaint purports to contain a copy of a print-out from the United States Patent and Trademark Office ("PTO") website.

18.    *Teen Vogue* reaches an average monthly audience of 972,555.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 18 of the Complaint and, therefore, deny the same.

19.    Since 2005, AMPI or its predecessors-in-interest have also published and widely sold and distributed throughout the United States and abroad the magazine for men, Men's Vogue.  AMPI owns several registrations and applications for MEN'S VOGUE trademarks in several classes, including Serial No. 7661345 and Registration No. 3,146,090 for the mark MEN'S VOGUE for publications.  A copy of a print-out from the PTO website of AMPI's registrations and applications for the MEN'S VOGUE marks is annexed hereto as Exhibit D.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 19 of the Complaint and, therefore, deny the same; except Defendants admit that Exhibit D to the Complaint purports to contain a copy of a print-out from the United States Patent and Trademark Office ("PTO") website.

20.    *Men's Vogue* reaches an average monthly audience of 300,000.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 20 of the Complaint and, therefore, deny the same.

21.    Since 1939, AMP1 or its predecessors-in-interest have also published and widely sold and distributed throughout the United States and abroad the women's magazine *Glamour*. AMPI owns numerous registrations and applications for the GLAMOUR marks including Registration No. 407,439, which was registered in the PTO on June 6, 1944.  A copy of a printout from the PTO website of AMPI's registrations and applications for the GLAMOUR mark is annexed hereto as Exhibit E.  The GLAMOUR mark has been used on and in connection with the magazine of the same title since May 1, 1941.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 21 of the Complaint and, therefore, deny the same; except Defendants admit that Exhibit E to the Complaint purports to contain a copy of a print-out from the United States Patent and Trademark Office ("PTO") website.

22.     The U.S. edition of *Glamour* reaches an average monthly audience of 2,248,961.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 22 of the Complaint and, therefore, deny the same.

23.     Like *Vogue, Glamour* is published through AMPI's subsidiaries or through local licensees throughout the world, including the United Kingdom, France, Holland, Spain, Italy, Germany, Greece, Poland, Hungary, Russia, South Africa and Latin America.  AMPI also owns over 300 trademark registrations worldwide for GLAMOUR, a report of which registrations is annexed hereto as Exhibit F.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 23 of the Complaint and, therefore, deny the same; except Defendants admit that Exhibit F to the Complaint purports to contain a copy of a print-out from the United States Patent and Trademark Office ("PTO") website.

24.     Since 1993, AMPI or its predecessors-in-interest have also published and widely sold and distributed throughout the United States and abroad the technology news and information magazine *Wired*.  AMP1 owns numerous registrations and applications for WIRED trademarks in several classes, including Serial No. 76,661,349, Registration Nos. 3,078,104,

2,781,351, and 1,853,612 (which was registered in the PTO on September 13, 1994). A copy of a print-out from the PTO website of AMPI's registrations and applications for the WIRED marks is annexed hereto as Exhibit G.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 24 of the Complaint and, therefore, deny the same; except Defendants admit that Exhibit G to the Complaint purports to contain a copy of a print-out from the United States Patent and Trademark Office ("PTO") website.

25.     *Wired* reaches an average monthly audience of 656,453.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 25 of the Complaint and, therefore, deny the same.

26.     Since 1982, AMPI or its predecessors-in-interest have also published and widely sold and distributed throughout the United States and abroad the men's magazine *Details*. AMPI owns several registrations and applications for DETAILS trademarks in several classes, including Serial No. 78,865,887 and Registration Nos. 1,619,890 and 2,695,667 (which was registered in the PTO on March 11, 2003). A copy of a print-out from the PTO website of AMPI's registrations and applications for the DETAILS marks is annexed hereto as Exhibit H.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 26 of the Complaint and, therefore, deny the same; except Defendants admit that Exhibit H to the Complaint purports to contain a copy of a print-out from the United States Patent and Trademark Office ("PTO") website.

27.    *Details* reaches an average monthly audience of 455,374.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 27 of the Complaint and, therefore, deny the same.

28.    Since 1909, when Conde Montrose Nast acquired Vogue, the name Conde Nast has been at the forefront of magazine publishing in the United States.  AMPI or its predecessors-in-interest have long held valuable common-law rights in the CONDE NAST mark which has been used in commerce in the form CONDE NAST PUBLICATIONS since 1922.  AMPI owns numerous registrations and applications for CONDE NAST trademarks in numerous classes, including Registration Nos. 1,568,296, 3,102,717, 2,761,342, 2,837,045 and 2,543,327.  A copy of a print-out from the PTO website of AMPI's registrations and applications for the CONDE NAST marks is annexed hereto as Exhibit I.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 28 of the Complaint and, therefore, deny the same; except Defendants admit that Exhibit I to the Complaint purports to contain a copy of a print-out from the United States Patent and Trademark Office ("PTO") website.

29.    AMPI is diligent in pursuing infringers of its valuable and famous names and trademarks.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 29 of the Complaint and, therefore, deny the same.

30.     CondeNet, Inc. ("CondeNet") is an affiliated company of AMPI that is licensed to operate websites for AMPI's magazines, as well as to use certain of AMPI'S trademarks in connection with certain Internet activities.  AMPI also operates condenast.com, a website that provides information about the magazines published by AMPI'S Conde Nast division, including subscription information and electronic links to individual websites for those magazines.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 30 of the Complaint and, therefore, deny the same.

31.     The individual websites for AMPI's magazines are operated by either CondeNet, Conde Nast or other licensees of AMPI, and include among others websites operated under the following Internet domain names: vogue.com, teenvogue.com, glarnour.com, wired.com and wireddigital.com.  In addition, CondeNet operates style.com, which is a website devoted to fashion and contains content from plaintiffs magazine Vogue, and men.style.com, which is a website devoted to men's fashion and contains content from plaintiffs magazine *Details*.  There is also a central condenet.com website that provides links to style.com and men.style.com, as well as to AMPI's individual magazine websites and prominently displays trademarks for the majority of AMPI's magazines.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 31 of the Complaint and, therefore, deny the same.

32.     Corresponding with the foreign editions of *Vogue* and *Glamour* magazines plaintiff publishes, AMPI, through its subsidiaries or local licensees, also maintains websites

13

devoted to each of the foreign editions.  A list of AMPI's international sites operated by CondeNet is annexed hereto as Exhibit J.

**<u>ANSWER:</u>**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 32 of the Complaint and, therefore, deny the same; except Defendants admit that Exhibit J to the Complaint purports to contain a list of names.

33.    In total, all of the websites featuring all of AMPI's magazines have more than 6 million unique users and receive more than 250 million web page views per month.  Those websites prominently display AMPI'S trademarks for both its magazines and its general corporate business.  For example, condenast.com prominently displays the trademarks for the 17 magazines published by AMPI's division Conde Nast, including *Vogue, Teen Vogue, Men's Vogue, Glamour, Wired and Details*.  Also, AMPI's individual magazine websites regularly include advertisements and links to sister publications, and regularly display the trademarks for those other publications.

**<u>ANSWER:</u>**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 33 of the Complaint and, therefore, deny the same.

34.    AMP1 has made substantial, continuous, and exclusive use of the domain name <u>condenast.com</u> as the name of its Conde Nast website since 1994.

**<u>ANSWER:</u>**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 34 of the Complaint and, therefore, deny the same.

### Internet Domain Names

35.     The Internet is an interconnected network of computers that permits users to exchange information and communicate with each other electronically.  All computers connected to the Internet are assigned an identifying address known as an Internet Protocol ("IP") address, which consists of a numerical string unique to that particular computer.

**ANSWER:**

Defendants admit the allegations contained in Paragraph 35 of the Complaint.

36.     IP addresses are crucial to the operation of the Internet, but are difficult for human users to remember and manipulate.  Therefore, a corresponding system of alphanumeric "domain names" has been put in place that is overseen by the Internet Corporation for Assigned Names and Numbers ("ICANN"), a nonprofit organization responsible for global IP address space allocation.

**ANSWER:**

Defendants admit the allegations contained in Paragraph 36 of the Complaint.

37.     When searching for a particular business, or for particular products or services, on the Internet, users often deduce domain names based on the name of that business or the name of its products or services.  For instance, a user attempting to reach Conde Nast might expect to find the company by typing "www.condenast.com" into his or her Internet browser.  A domain name that incorporates a company's name or trademark is thus a valuable method for a company to reach its customers or potential customers.  For this reason, companies routinely register domain names incorporating their various trademarks.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 37 of the Complaint and, therefore, deny the same.

38.     In addition, businesses typically use an IP address that incorporates the name of their business as their email address.  Thus, for example, one would expect to reach an employee of Conde Nast at an email address of [person's name]@condenast.com.  Similarly, if you receive an e-mail from a [person's name] at condenast.com, you would believe and understand that the person worked at Conde Nast.  The use of a business's name in its email address, which is used to communicate with the business's customers and the public at-large, furthers recognition of the business and identity and association of the business with its trademark.  Such use therefore is a valuable marketing tool.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 38 of the Complaint and, therefore, deny the same.

### Defendants' Infringing Activities

39.     Upon information and belief, ZZN provides, among other Internet-related services, email services and support to customers.  Customers interested in opening an email account with ZZN are directed to "search for an email service name in [ZZN's] directory."  Upon further information and belief, ZZN maintains a directory of email service names which incorporate or have incorporated a variety of famous marks, such as STARBUCKS, PEPSI and DISNEY, as well as AMPI's marks, VOGUE, TEEN VOGUE, MEN'S VOGUE, GLAMOUR, CONDE NAST, WIRED and DETAILS.  As a result, a customer interested in opening an account under AMPI's marks can search ZZN's directory for AMPI's marks, and the search will

yield several email addresses available for use. For example, a search under AMPI's marks, VOGUE, GLAMOUR and CONDE NAST has yielded results that include yourname@luomovogue.zzn.com, your-name@teenvogue.zzn.com, your-name@VOGUEmail.zzn.com, your-name@glamourawards.zzn.com and yourname@condenastmagazines.zzn.com. A complete list of vanity email addresses that can be obtained or have been available through a search of ZZN's directory and that are confusingly similar to AMPI marks is annexed hereto as Exhibit K.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 39 of the Complaint; except admit that customers interested in opening an email account are directed to search for an email service name, and that the publicly available database used by the ZZN web resource may incorporate or have incorporated a variety of famous marks.

40.    Upon information and belief, ZZN's business model is based at least in part on offering email accounts under famous marks as described above, in order to attract and direct third-party advertisers to the home pages of those accounts. Having established a customer base utilizing famous marks, including AMPI's marks, ZZN markets to potential advertisers, offering them "several prime spots … to reach [ZZN's] attractive demographic of site service owners and email end users within [ZZN's] email interface itself."

**ANSWER:**

Defendants deny the allegations contained in Paragraph 40 of the Complaint.

41.    Specifically, ZZN offers third-party advertisers access to its email users "by purchasing banners, pop-up and button space, and tag line messages, which are sent out with each of [ZZN's] millions of daily email messages." ZZN offers third-party advertisers

advertising space on the first web page users access upon logging into their email accounts and additional space on other web pages accessed by users of ZZN's email accounts.

**<u>ANSWER:</u>**

Defendants admit the allegations contained in Paragraph 41 of the Complaint

42.    ZZN's offer and maintenance of a database of email service names which incorporate plaintiffs trademarks, constitutes a violation of AMPI's rights in and to those marks.

**<u>ANSWER:</u>**

Defendants deny the allegations contained in Paragraph 42 of the Complaint

43.    AMPI's marks are each distinctive, and have acquired worldwide fame through AMPI's broad-based advertising, marketing and promotional efforts, as well as press coverage of AMPI's products and services.

**<u>ANSWER:</u>**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 43 of the Complaint and, therefore, deny the same.

44.    Upon information and belief, ZZN had actual knowledge of AMPI's rights in the marks set forth above, and offered, and/or continues to offer despite explicit notice, confusingly similar marks in utter disregard of AMPI's rights and in bad faith.

**<u>ANSWER:</u>**

Defendants deny the allegations contained in Paragraph 44 of the Complaint

45.    Upon information and belief, ZZN's email service names containing AMPI's marks have caused actual or are likely to cause confusion among individuals searching for AMPI's products and services offered therein, because consumers who receive any emails from ZZN's customers using email addresses that contain AMPI's marks are likely to believe they are

dealing with a representative of AMPI or of AMPI's products and services, and may believe that any communications from such ZZN customers are sponsored by or affiliated with AMPI.  This confusion will cause irreparable harm to AMPI's reputation and goodwill.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 45 of the Complaint

46.     ZZN's actions have been and are intentional.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 46 of the Complaint

47.     Upon information and belief, ZZN earns substantial revenue from these email accounts through advertising, sponsorships and click-through tracking.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 47 of the Complaint

**Defendants' Customers' Infringing Activities**

48.     Upon information and belief, ZZN's customers have used email service names offered and provided by ZZN in order to improperly associate themselves to AMPI and/or AMPI's goods and/or services.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 48 of the Complaint and, therefore, deny the same.

49.     For example, in or about April 2007, a ZZN customer, "Sabine Schmidt" attempted to pose as an employee or associate of *Vanity Fair*, a publication owned by AMPI, and sent an email under the address, sabineschrnidt@condenast.zzn.com, to AMPI's German subsidiary, Conde Nast Verlag, which publishes a German edition of *Vanity Fair*, requesting

photos for an alleged upcoming issue of *Vanity Fair* in the United States. This incident resulted in actual confusion as to whether the email address sabineschmidt@condenast.zzn.com related to any Conde Nast entity.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 49 of the Complaint and, therefore, deny the same.

50.     Furthermore, upon information and belief, ZZN also provides website services and support, which allow users who have set up email accounts with ZZN to post content on web pages associated with their email accounts. Specifically, upon information and belief, users of email accounts set up under AMPI's marks have posted content on the web pages associated with their email account that is likely to cause confusion with AMPI's properties. For example, a customer interested in joining a ZZN email account under the VOGUE name is taken to a site to register for email service that contains images of fashion-related accessories, suggesting an association with AMPI's *Vogue* magazine. A copy of a print-out of that site is annexed hereto as Exhibit L.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 50 of the Complaint; except Defendants admit that ZZN provides website services and support that allows users who have set up email accounts with ZZN to post content on web pages associated with their email accounts, and that Exhibit L to the Complaint purports to contain a copy of a print-out of a website.

51.     ZZN's customers, as described above, do not have any legitimate purpose for using email service names that incorporate AMPI's famous trademarks. On good faith belief, given the above-described improper uses of AMPI's trademarks by ZZN customers, AMPI has

every reason to suspect that customers who register email accounts containing AMPI's trademarks with ZZN use such accounts for the sole purpose of improperly associating themselves with AMPI and/or AMPI's goods and services.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 51 of the Complaint.

### Defendants' Willful Behavior

52.     Upon discovery of ZZN's and ZZN's customers' infringing acts, AMPI notified ZZN of such behavior and have made several demands that ZZN remove from its directory any offerings of email accounts under AMPI's trademarks and to cease support of its customers' email accounts that are infringing upon AMPI's trademarks.  Despite such express notice, ZZN has refused to do so.  To date, ZZN continues to maintain AMPI's marks in its directory and support the infringing email accounts.

**ANSWER:**

Defendants admit that AMPI requested that ZZN remove AMPI's trademarks from a publicly available database created by third parties unrelated to any of the Defendants.

53.     Furthermore, since AMPI's last demand, ZZN has acted even more egregiously by not only refusing to remove from its directory those email service names containing AMPI's trademarks and continuing to promote and offer to sell the infringing domain, but ZZN had also added additional infringing domains including: your-name@LEGAL.VogueEspaniol.zzn.com, your-name@LEGAL.VogueEspanol.zzn.com, yourname@LEGAL.condenastinternational.zzn.com and your-yourname@LEGAL.condenastmagazines.zzn.com.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 53 of the Complaint

## AS AND FOR A FIRST CLAIM FOR RELIEF

### (Infringement of Registered Marks, 15 U.S.C. 5 1114)

54.     The allegations of paragraphs 1 through and including 53 are incorporated as if fully set forth herein.

**ANSWER:**

Defendants repeat their Answers to Paragraphs 1 through 53 as if more fully set forth herein.

55.     AMPI's registered trademarks are each distinctive and/or famous.  That distinctiveness and/or fame has been enhanced further through widespread use in advertising, which has exposed the trademarks to millions of people worldwide. Defendants, with actual or constructive notice of AMPI's federal registration rights under 15 U.S.C. §1072, and long after AMPI had commenced use of the federally-registered marks, registered and used Internet domain names and vanity email addresses that copy and incorporate AMPI's federally-registered marks in interstate commerce in a manner that has caused and is likely to cause confusion, deception, and mistake among consumers.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 55 of the Complaint; except that Defendants are without knowledge or information sufficient to form a belief as to the allegations concerning the distinctiveness and/or fame of AMPI'S marks and the enhancement of such distinctiveness and/or fame through widespread use in advertising contained in Paragraph 55 of the Complaint and, therefore, deny the same.

56.    AMPI has never consented to defendants' use of its distinctive and famous registered trademarks.

**ANSWER:**

Defendants admit the allegations contained in Paragraph 56 of the Complaint.

57.    Defendants' use of email service names incorporating AMPI's registered marks is also likely to cause confusion among consumers.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 57 of the Complaint.

58.    Defendants' actions constitute a violation of 15 U.S.C. §1114(1).

**ANSWER:**

Defendants deny the allegations contained in Paragraph 58 of the Complaint

59.    Defendants have caused AMPI irreparable harm, and unless enjoined, defendants' continued offer and use of email service names containing AMPI's marks will continue to cause irreparable harm to AMPI.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 59 of the Complaint

**AS AND FOR A SECOND CLAIM FOR RELIEF**

**(Federal Trademark Dilution, 15 U.S.C. § 1125(c))**

60.    The allegations of paragraphs 1 through and including 59 are incorporated as if fully set forth herein.

**ANSWER:**

61.    Each of AMPI's registered and common law marks is famous and/or distinctive, and their fame and/or distinctiveness has been enhanced by the widespread use and promotion of

the goods and services with which they are associated.  AMPI has used its marks for years and has extensively promoted them throughout the world.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 61 of the Complaint and, therefore, deny the same.

62.     Defendants offered and used the email service names at issue after AMPI's federal and common law marks had become famous and distinctive.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 62 of the Complaint

63.     Defendants' commercial use of the email service names at issue is likely to confuse consumers as to the source, sponsorship or affiliation of said services and blurs and tarnishes the distinctiveness of AMPI's trademarks.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 63 of the Complaint.

64.     Defendants' commercial use in commerce of the email service names at issue dilutes AMPI's trademarks in violation of 15 U.S.C. §1125(c).

**ANSWER:**

Defendants deny the allegations contained in Paragraph 64 of the Complaint.

65.     Defendants' conduct has caused, and will continue to cause, AMPI irreparable injury, leaving AMPI with no adequate remedy at law.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 65 of the Complaint.

## AS AND FOR A THIRD CLAIM FOR RELIEF

### (Federal Unfair Competition, 15 U.S.C. §1125(a))

66.     The allegations of paragraphs 1 through and including 65 are incorporated as if fully set forth herein.

**ANSWER:**

Defendants repeat their Answers to Paragraphs 1 through 65 as if more fully set forth herein.

67.     Defendants' actions described above constitute unfair competition, false designation of origin, false or misleading descriptions or representations of fact, false advertising and/or unfair or deceptive trade practices, in that they are likely to cause confusion or cause mistake, or to deceive others as to the origin, sponsorship or approval of defendants' activities, all in violation of 15 U.S.C. §1125(a).

**ANSWER:**

Defendants deny the allegations contained in Paragraph 67 of the Complaint.

68.     As a direct and proximate result of the foregoing acts, practices and conduct of defendants, AMPI has been and is likely to be substantially injured in its business, including its reputation, resulting in lost revenues and profits, and diminished goodwill and reputation.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 68 of the Complaint.

69.     AMPI has no adequate remedy at law because its marks are unique and represent to the public AMPI's identity, reputation and goodwill, such that damages alone cannot fully compensate AMPI for defendants' misconduct.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 69 of the Complaint.

70.    Unless enjoined by this Court, defendants will continue to unfairly compete, falsely designate the origin of their goods, make false descriptions or representations, and use AMPI's marks to cause confusion, all to the irreparable injury to the business, identity, goodwill and reputation of AMPI.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 70 of the Complaint.

## AS AND FOR A FOURTH CLAIM FOR RELIEF

### (Common Law Unfair Competition)

71.    The allegations of paragraphs 1 through and including 70 are incorporated as if fully set forth herein.

**ANSWER:**

Defendants repeat their Answers to Paragraphs 1 through 70 as if more fully set forth herein.

72.    Defendants' acts and practices as above-described have been undertaken with the intention of benefiting from and profiting upon AMPI's marks.  This goal is accomplished by the use of the slight variations of AMPI's trademarks in defendants' email service names, which use is intended to lead and tends to lead the public to believe that there is a connection or association between defendants and the owners of AMPI's marks, when in truth and in fact there is none.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 72 of the Complaint.

73.    Upon information and belief, defendants will make a profit as the direct result of their above-described actions, which were undertaken with malice towards AMPI, and/or in wanton, willful and reckless disregard of AMPI's rights.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 73 of the Complaint.

74.    Defendants' actions as above-described injure AMPI's reputation and goodwill, expressly mislead the public by falsely imputing a connection or relationship between defendants' email service names and AMPI, cause AMPI to suffer financially, and constitute unfair competition in derogation of the common law.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 74 of the Complaint.

75.    By reason of the above-described acts, defendants have engaged in unfair competition under and pursuant to the laws of the State of New York and have caused, and will continue to cause, AMP1 irreparable harm, leaving AMPI with no adequate remedy at law.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 75 of the Complaint.

## AS AND FOR A FIFTH CLAIM FOR RELIEF

### (Trademark Dilution Under N.Y. Gen. Bus. Law 360-L)

76.    The allegations of paragraphs 1 through and including 76 are incorporated as if fully set forth herein.

**ANSWER:**

Defendants repeat their Answers to Paragraphs 1 through 76 as if more fully set forth herein.

77.     The registered trademarks owned by AMPI possess a truly distinctive quality and have acquired secondary meaning in the mind of the public as a source of quality magazines, and other goods and services sold under those marks.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 77 of the Complaint and, therefore, deny the same.

78.     AMPI's trademarks, on the one hand, and the email service names at issue, on the other hand, are strikingly similar, and both are used in connection with Internet websites.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 78 of the Complaint.

79.     Defendants' actions as described above have been undertaken without the consent of AMPI and with the predatory intent of benefiting commercially from an association with AMPI's trademarks.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 79 of the Complaint.

80.     AMPI's trademarks are nationally and internationally renowned as a result of their long and exclusive use, AMPI's substantial expenditures for advertising and promotion, licensing and trademark policing, and unsolicited media coverage.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 80 of the Complaint and, therefore, deny the same.

81.     Because the use of email addresses to conduct communications and/or other business that is not associated with the actual business of AMPI and its goods and services is

inconsistent with the carefully designed marketing objectives of AMPI, defendants' above-described acts will dilute and/or are likely to dilute the distinctiveness of AMPI's marks by tarnishing the affirmative associations that the marks have come to convey, damaging the reputation of those marks, and cause financial injury to AMPI.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 81 of the Complaint.

82.    Because defendants use confusingly similar variations of AMPI's trademarks, consumers are likely to be confused as to the source, sponsorship or affiliation of defendants' services and said use will dilute and/or is likely to dilute the distinctiveness of those marks by lessening their capacity to signify goods and services emanating from AMPI.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 82 of the Complaint.

83.    By reason of the above-described acts, defendants have diluted and/or is likely to dilute AMPI's trademarks in violation of §360-L of the New York General Business Law, leaving AMPI with no adequate remedy at law.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 83 of the Complaint.

## AS AND FOR A SIXTH CLAIM FOR RELIEF

**(Deceptive Acts and Practices Under N.Y. Gen. Bus. Law 349)**

84.    The allegations of paragraphs 1 through and including 83 are incorporated as if fully set forth herein.

**ANSWER:**

Defendants repeat their Answers to Paragraphs 1 through 83 as if more fully set forth herein.

85.     Defendants' use of AMPI trademarks, and the reputation and goodwill associated therewith, as described above, constitute unfair, willful and deceptive trade practices in violation of N.Y. General Business Law §349.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 85 of the Complaint.

86.     As a direct and proximate result of the foregoing acts, practices and conduct of defendants, AMPI has been and is likely to be substantially injured in its business, including its reputation, resulting in lost revenues and profits, and diminished goodwill and reputation.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 86 of the Complaint.

87.     AMPI is entitled to recover treble damages pursuant to N.Y. General Business Law §349.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 87 of the Complaint.

**AS AND FOR A SEVENTH CLAIM FOR RELIEF**

**(Contributory Trademark Infringement)**

88.     The allegations of paragraphs 1 through and including 87 are incorporated as if fully set forth herein.

**ANSWER:**

Defendants repeat their Answers to Paragraphs 1 through 87 as if more fully set forth herein.

89.     Defendants induce third-party users to purchase email accounts using email service names containing AMPI's marks by directing users to select such names from defendants' directory.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 89 of the Complaint.

90.     Defendants knew or had reason to know, and were put on notice, that such email accounts were being used by third-party users in a manner that infringed AMPI's rights.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 90 of the Complaint.

91.     Third-party users who have contracted with defendants to use ernail service names containing AMPI'S famous marks are infringing AMPI's rights by such use.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 91 of the Complaint.

92.     Despite explicit notice of the improper use of AMPI's marks, defendants continued to offer email service names containing AMPI's marks to third-party users and to support their email accounts.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 92 of the Complaint.

93.     Defendants' acts constitute contributory trademark infringement.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 93 of the Complaint.

94.    Defendants' and third parties' conduct has caused great and irreparable damage and injury to AMPI, leaving AMPI with no adequate remedy at law.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 94 of the Complaint.

## AS AND FOR AN EIGHTH CLAIM FOR RELIEF

### (Contributory Dilution)

95.    The allegations of paragraphs 1 through and including 94 are incorporated as if fully set forth herein.

**ANSWER:**

Defendants repeat their Answers to Paragraphs 1 through 94 as if more fully set forth herein.

96.    Defendants' acts of inducing third-party users to purchase email accounts using email service names containing AMPI's marks by directing users to select such names from defendants' directory and refusal, despite repeated notice, to remove such email service names from their directory, with the knowledge that third-party users were using such email accounts in dilution of AMPI's marks constitute contributory trademark dilution.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 96 of the Complaint.

97.    Defendants' and third parties' conduct has caused great and irreparable damage and injury to AMPI, leaving AMPI with no adequate remedy at law.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 97 of the Complaint.

## AS AND FOR A NINTH CLAIM FOR RELIEF

### (Vicarious Infringement)

98.    The allegations of paragraphs 1 through and including 97 are incorporated as if fully set forth herein.

**ANSWER:**

Defendants repeat their Answers to Paragraphs 1 through 97 as if more fully set forth herein.

99.    By providing the technical and operational support of email accounts under email service names containing AMPI's marks, and by the terms of its own services, ZZN has the authority to exercise control over the infringing email accounts owned by the third-party users.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 99 of the Complaint.

100.    Defendants are therefore liable for vicarious trademark infringement.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 100 of the Complaint.

101.    Defendants' conduct has caused great and irreparable damage and injury to AMPI, leaving AMPI with no adequate remedy at law.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 101 of the Complaint.

**ALLEGED PRAYER FOR RELIEF**

102.     Defendants deny the allegations contained in subparagraphs A through G of the WHEREFORE clause following Paragraph 101 of the Complaint.

**DEMAND FOR JURY TRIAL**

103.     In response to Plaintiff's jury demand, Defendants deny that that Plaintiff is entitled to trial by jury on all issues, all claimed damages and/or for all relief sought as certain allegations contained in the Complaint call for legal conclusions.  Defendants hereby demand a trial by jury for all issues so triable.

**AFFIRMATIVE DEFENSES**

(Failure to State a Claim)

104.     Plaintiff's Complaint fails to state a claim upon which relief may be granted as to one or more of Counts One through Nine.

(Anti-Cybersquatting Consumer Protection Act)

105.     As a domain name registrar, Defendants cannot be held liable for damages for the acts alleged in the Complaint pursuant to Lanham Act §32(2)(D)(iii), 15 U.S.C. §1114(2)(D)(iii).

(Defective Pleading)

106.     Plaintiff's complaint alleges violations of law without sufficient specificity.

(Lack of Subject Matter Jurisdiction)

107.     Plaintiff's federal claims lack merit and this court lacks subject matter jurisdiction over Plaintiff's state claims.

(Collateral Estoppel/Preclusion)

108.     Plaintiff's claims are barred by the doctrine of preclusion, collateral estoppel and/or *res judicata* since the issues in this case have been previously adjudicated by the federal courts.

(Plaintiff's Lack of Standing)

109.     Plaintiff lacks standing to sue for infringement of the asserted trademark(s) because it has no ownership interest therein.

(Personal Jurisdiction)

110.     This Court has no personal jurisdiction over of the Defendants.

(Improper Venue)

111.     Venue is improper in this district.

(Unclean Hands)

112.     Plaintiff's claims may be barred, in whole or in part, from any and all recovery on each and every alleged cause of action by virtue of the equitable doctrine of unclean hands.

(Defendants' Innocent Conduct)

113.     Defendants have not done any act or thing and is not proposing to do any act or thing in violation of any rights validly belonging to Plaintiff.

(No Willfulness)

114.     Defendants had no knowledge and/or notice of the rights alleged in the Complaint before being served with the Complaint herein and, therefore, any infringement cannot be deemed willful.

(Invalid and Unenforceable)

115.    On information and belief, one or more Plaintiff's alleged trademarks and/or trade names (or a portion thereof) is invalid and/or unprotectable for reasons including, but not limited to, the following:

a. The alleged trademark and/or trade name, or portion thereof, is a generic name for the goods and/or services with which the mark is used by Plaintiff; and/or

b. The alleged trademark and/or trade name, or portion thereof, is merely descriptive of the goods and/or services with which the mark is used by Plaintiff; and/or

c. The alleged trademark and/or trade name, or portion thereof, has not been in continuous use for the period of time alleged by Plaintiff; and/or

d. Plaintiff has not established secondary meaning in the alleged trademark and/or trade name, or portion thereof.

(Doctrine of Waiver)

116.    Plaintiff's claims may be barred, in whole or in part, based on the doctrine of waiver.

(Doctrine of Estoppel)

117.    Plaintiff's claims may be barred, in whole or in part, based on the doctrine of estoppel.

(Doctrine of Laches)

118.    Plaintiff's claims may be barred, in whole or in part, based on the doctrine of laches.

## PRAYER FOR RELIEF

WHEREFORE, Defendants pray:

a. That this Court find against Plaintiff and deny all relief requested in the Complaint.

b. That this Court declare Plaintiff's alleged trademarks not infringed by Defendants.

c. That this Court find for Defendants on each of their affirmative defenses.

d. That this Court deny Plaintiff's request for compensatory, punitive and treble damages, attorneys' fees and costs.

e. That this Court grant Defendants their attorneys' fees and costs.

f. That this Court grant Defendants such other and further relief as the Court may deem just, proper and equitable.

## COUNTERCLAIM

## DECLARATION OF NON-INFRINGEMENT

119.   Defendants bring the following Counterclaim without waiving their affirmative defenses relating to personal jurisdiction and venue.  These Counterclaim seeks a declaratory judgment that Plaintiff has no rights in the generic portions of its marks and that Defendants are not infringing any of Plaintiff's rights in any of the marks alleged in the Complaint and are not engaging in any acts of infringement including palming off or dilution under the Lanham Act or laws of the state of New York, or any other state, or deceptive trade practices

120.   This is a claim for a declaratory judgment.  This Court has subject matter jurisdiction pursuant to Title 28 U.S.C. §§ 2201 and 2202, under the Trademark Laws of the United States pursuant to Title 15 U.S.C. §1051 *et seq.*, and under Fed.R.Civ.P. 13.  Subject matter jurisdiction is conferred on this Court by, *inter alia*, 28 U.S.C. §§ 1331 and 1338(a), 15 U.S.C. §1121 and under 28 U.S.C. §1367 and the principles of supplemental jurisdiction with

respect to the common law and state claims.  There is an actual controversy between the parties concerning the validity and scope of the trademark(s) alleged in the Complaint, and Defendants' liability for infringement thereof.  Plaintiff has submitted to the personal jurisdiction of this Court.

121.    Defendants are each California business entities having a principal place of business in Folsom, California.

122.    Upon information and belief, AMPI is a corporation organized and existing under the laws of the state of New York and having a principal place of business located at Four Times Square, New York, New York 10036.

123.    AMPI alleges that it is the owner of common law rights in various registered and unregistered trademarks.

124.    Upon information and belief, AMPI does not have any rights in the generic components of its registered and unregistered trademarks (such as the terms "vogue", "details", "wired", "glamour", and "style").

125.    Defendants' alleged use of generic components of AMPI's registered and unregistered trademarks does not infringe any valid trademark rights owned by AMPI.

126.    Defendants have not infringed, have not contributed to the infringement, and have not induced infringement of any valid trademark rights owned by AMPI.

128.    Defendant Zap Zone Network is acting as a domain name registrar.  Thus, the Defendants can not be held liable for damages for the acts alleged in the Complaint pursuant to Lanham Act §32(2)(D)(iii), 15 U.S.C. §1114(2)(D)(iii).

## **DEMAND FOR JURY TRIAL**

129.    Defendants hereby demand a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Defendants pray for judgment against Plaintiff as follows:

1. Dismissing Plaintiff's Complaint;

2. Sustaining Defendants' Affirmative Defenses;

3. Awarding declaratory relief to Defendants that:

   a. Plaintiff has no protectable rights in the generic designations "vogue", "details", "wired", "glamour", and "style"

   b. Plaintiff has not demonstrated secondary meaning in the designations "vogue", "details", "wired", "glamour", and "style";

   c. Defendants have not infringed any rights of Plaintiff.

   d. Plaintiff is without right or authority to threaten or maintain suit against Defendants for infringement of any of its registered or unregistered trademarks;

   e. Plaintiff, and those in active concert or participation with Plaintiff who receive actual notice thereof, are permanently enjoined from initiating trademark patent litigation against Defendants, or threatening Defendants or any of their customers, dealers, suppliers, licensees, agents, servants, or employees, or any prospective or present sellers, dealers, suppliers, licensees, distributors, or customers of Defendants or users of Defendants' services, with trademark infringement litigation based on any of the allegations contained in Plaintiff's Complaint, or charging any of them either verbally or in writing with infringement of any of Plaintiff's rights;

f.  Declaring that this is an exceptional case and awarding Defendants their

attorneys' fees;

g.  Awarding Defendants their costs; and

h.  Awarding Defendants such other and further relief as this Court may deem

just and equitable.

Dated: November 30, 2007                    Respectfully submitted,

/s/_____

By:  Bruce D. Katz, Esq. (BK-2041)
     Bruce D. Katz & Associates
     225 Broadway – 37th Floor.
     New York, NY  10007
     (212)233-3434

     *Attorneys for Defendants*
     *Zap Zone Network, Mail Centro, Inc. and*
     *CP Software Group*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing Answer and Counterclaims has been served on plaintiff this 30th day of November 2007 by depositing an envelope containing the same with the United States Postal Service, postage prepaid, addressed to counsel for plaintiff counsel as follows:

> Elizabeth A. McNamara, Esq.
> DAVIS WRIGHT TREMAIN LLP
> 1633 Broadway
> New York, New York 10019-6708

> \_\_\_\_/s/_____
> Bruce D. Katz, Esq.

41